UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

Jaima Geisert,

    Plaintiff,

vs.

Automatic Equipment Manufacturing Co.,
d/b/a Blue Ox,

    Defendant.

Court File No.: _____

**COMPLAINT AND JURY DEMAND**

The Plaintiff Jaima Geisert ("Plaintiff"), for her Complaint against Defendant Automatic Equipment Manufacturing Co. d/b/a Blue Ox ("Defendant" or "Blue Ox"), states and alleges:

## NATURE OF CLAIM

1. Plaintiff brings this action to remedy unlawful discrimination based on sex in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. §§ 2000e, *et. seq.*; age in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621, *et. seq.*; and violation of the Equal Pay Act. Defendant's actions also violated protections afforded to Plaintiff under analogous laws protecting citizens of Nebraska.

## PARTIES, JURISDICTION & VENUE

2. Plaintiff resides in and is a citizen of Thurston County, Nebraska. Plaintiff is a female and was 42 years old when her employment was unlawfully terminated.

3. At the time of her termination, Plaintiff was employed as a Vice President for

Blue Ox.

4. Defendant is a manufacturer of recreational and commercial towing products as well as agricultural roller mill products. Defendant manufactures these products from its facility in Pender, Nebraska.

5. Defendant is headquartered in Pender, Nebraska, incorporated in Nebraska, and doing business in Nebraska.

6. At all relevant times, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of 42 U.S.C. § 2000e.

7. At all relevant times, Plaintiff and Defendant were "employee" and "employer," respectively, within the meaning of 29 U.S.C. § 203.

8. Jurisdiction is proper in the United States District Court for the District of Nebraska because Plaintiff's cause of action arises under the laws of the United States pursuant to 28 U.S.C. § 1331.

9. Venue is proper in this Court because the unlawful, practices alleged herein occurred in and around Pender, Nebraska, because Defendant is a Nebraska corporation with its operations within this district and the majority of the likely witnesses, including Plaintiff, reside within this district.

## FACTS

10. Plaintiff had worked for Defendant from December 1999 to October 2008.

11. In May 2015, President Ellen Kietzmann recruited Plaintiff to come back to Defendant and she returned in July 2015.

12. Shortly before Ms. Geisert rejoined Defendant, the long-time owner, Jay

2

Hesse, had died, the Company was owned by a trust with Ellen Kietzmann as the trustee and Michael Hesse, Chairman of the Board (step-son of Jay Hesse), Sandra Hesse, Secretary (widow of Jay Hesse), and Ellen Kietzmann, President and CEO sitting on the Board of Directors.

13. Ms. Kietzmann had operational control of the Company at the time of Plaintiff's hire and was therefore the decision-maker in hiring Ms. Geisert.

14. At the time of Ms. Geisert's hiring, Michael Hesse was a board member of Defendant, but had full-time employment with another company, Beef Products, Inc. In November 2016, Mr. Hesse quit his job and Blue Ox became his full-time primary business.

15. In early 2017, he also became the principal owner of Blue Ox and took over operational control.

16. Mr. Hesse made the decision to terminate the Charging Party's employment.

17. Since 2016, as Mr. Hesse's control of the business has increased, he has hired a number of men from his former employer at Beef Products, Inc.

18. All of these men have been younger than Ms. Geisert.

19. Mr. Hesse brought in two executives, Jeff Carlson, Vice President, and Ronnie Merchant, Director of Procurement.

20. He also brought in four men to the agriculture sales team and one man to the RV sales team.

21. As these men have been brought in by Mr. Hesse, the culture within Blue Ox has become markedly more male dominated.

3

22. This male dominated culture manifested itself in obvious exclusion of Ms. Geisert from activities that other executives were involved. For instance, Ms. Geisert was directly involved in meetings with representatives from banks. However, Mr. Hesse would not invite Ms. Geisert to go to lunch outings with these same contacts, but he would incorporate Mr. Carlson and Mr. Merchant in these meetings and luncheons.

23. During the summer of 2017, there were two golf/social outings. One was specifically held with prospective customers that the Plaintiff was excluded from attending. The first outing was in mid-summer and the other outing was a golf outing on Tuesday, September 5 where Mr. Hesse, Mr. Carlson and Mr. Merchant were present with other male employees.

24. Plaintiff received no invitation or communication for either of these outings. When she learned of these outings, she asked why she was not invited. Mr. Hesse told Plaintiff that it was an agricultural activity.

25. However, Mr. Carlson and Mr. Merchant have scopes of responsibility like Plaintiff that span both the agriculture and towing aspects of the business.

26. In addition to being excluded from meetings and outings, Plaintiff was excluded from the Sioux City office space that was known as the "Boys' Club" by employees. The "Boys' Club" is decked out with flat screen televisions, black leather couches, beer in the refrigerator, and stocked with protein bars.

27. Mr. Hesse preferred to work in Sioux City, Iowa, over Pender, Nebraska, so the Sioux City location became an important location for Defendant.

28. Plaintiff asked Mr. Hesse for a key to the space and Mr. Hesse would not give

4

a key to Plaintiff, even though other executives did have access at and below her level with the Company.

29. In June 2017, Plaintiff discussed her concerns regarding the lack of respect she was receiving – specifically from Mr. Hesse and Mr. Carlson with Ms. Kietzmann. In discussing this with Ms. Kietzmann, Plaintiff specifically complained regarding being left out of the "Boys' Club" activities. Ms. Kietzmann told Plaintiff that she raised this concern on Plaintiff's behalf to Mr. Hesse in June 2017.

30. This discriminatory behavior manifested itself in the compensation offered to Plaintiff. Plaintiff made approximately $100,000 less than Mr. Carlson during his first full year with the company, who held the same title as her and was hired a year after her. Mr. Carlson was also provided a company vehicle where Plaintiff was not.

31. This greater level of compensation and benefits came while Plaintiff and Mr. Carlson had similar job functions and responsibilities and Mr. Carlson was not satisfactorily performing his work. Mr. Hesse and Ms. Kietzmann had knowledge of this pay differential and it was willful to maintain this differential on account of sex.

32. Ms. Kietzmann had numerous conversations with Mr. Hesse regarding Mr. Carlson not performing his work and rarely coming to the facility. Additionally, during Mr. Merchant's first months on the job, he routinely discussed with Ms. Kietzmann and Ms. Geisert that Mr. Carlson was not performing his job responsibilities as VP of Operations.

33. At the direction of Ms. Kietzmann, Ms. Geisert confronted Mr. Carlson on August 9, 2017, regarding his lack of attendance at the manufacturing plant in Pender

where he is the Vice President of Operations.

34. Ms. Geisert was routinely the only executive on site and had to address production issues in Mr. Carlson's absence numerous times, such as when the 5th wheel was launched, and production and quality issues occurred in mid-May 2017.

35. Despite Ms. Geisert confronting Mr. Carlson regarding his lack-luster performance, he continued to neglect his duties and still received far greater compensation than her.

36. In July 2017, she had what would become her final performance review. This review was exceedingly positive and resulted in a 21.4% increase in annual salary compensation to $170,000.

37. More generally, Ms. Geisert had never been addressed formally or informally that her performance was not up to par.

38. One week prior to her termination, Plaintiff was specifically told that her job was not in jeopardy and that she "had nothing to worry about" by Ellen Kietzmann, President.

39. A discussion regarding job security took place because the company was going through some layoffs and Ms. Geisert had been charged with laying off six employees and four contractors.

40. This made sense because the layoffs were not going to affect sales personnel, factory (direct) employees, nor executives.

41. Thirty minutes after letting go the last of the employees, Ms. Geisert met with Mr. Hesse. He informed her that he was terminating her for a "lack of performance"

and listed four specific performance critiques.

42. Plaintiff was not provided an opportunity to discuss any of these critiques with Mr. Hesse.

43. Had Mr. Hesse been concerned with any of these issues beyond developing a pretextual justification for termination, even a cursory evaluation would show that these concerns either lack merit or dramatically lack context and would have not led to the termination of any of the male executives.

44. The criticism's placed upon Plaintiff would apply equally to a number of male employees, but she was terminated for them on the basis of her sex and age.

**Plaintiff Exhausted Administrative Remedies**

45. Plaintiff filed timely charges of discrimination and retaliation in violation of Title VII and the ADEA with the United States Equal Employment Opportunity Commission (EEOC).

46. On or about September 27, 2018, the EEOC issued Plaintiff a notice of right to sue.

47. On or about October 19, 2018, the Nebraska Equal Opportunity Commission issued an administrative dismissal of Plaintiff charge that was cross-filed.

## COUNT 1

### VIOLATION OF EQUAL PAY ACT

48. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

49. Defendant willfully violated the Federal Equal Pay Act, 29 U.S.C. § 201, et seq., by refusing to compensate Plaintiff equally to male employees who had substantially similar job classifications, conditions, functions, titles, skills, and/or duties and failing to compensate Plaintiff equally to male employees who performed substantially similar work.

50. As a direct result of said sex discrimination, Plaintiff has incurred a substantial loss of earnings and earning capacity, incurred attorneys' fees, and has otherwise been damaged.

## COUNT 2

### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII

51. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

52. Defendant subjected Plaintiff to differential treatment based on sex, in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*

53. Plaintiff is female.

54. Defendant treated Plaintiff less favorably than male employees. This differential treatment includes, but is not limited to, terminating Plaintiff because of her sex.

55. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect the terms and conditions of Plaintiff's employment because of Plaintiff's sex.

56. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to Title VII which protects Plaintiff.

57. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses and suffered other serious damages.

## COUNT 3

### RETALIATION IN VIOLATION OF TITLE VII

58. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

59. Defendant subjected Plaintiff to differential treatment based on sex, in violation of the Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*

60. Plaintiff voiced her complaint that she believed she was being treated differently on account of her sex to the President and owners of Defendant.

61. Defendant treated Plaintiff less favorably than other employees that were not complaining of sex discrimination. This differential treatment includes, but is not limited to, terminating Plaintiff because of her complaints.

62. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect the terms and conditions of Plaintiff's employment because of Plaintiff's complaints.

63. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to Title VII which protects Plaintiff.

64. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses and suffered other serious damages.

## COUNT 4

### AGE DISCRIMINATION IN VIOLATION OF THE ADEA

65. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

66. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful age discrimination in violation of the Age Discrimination in Employment Act, 29 U.S.C §§ 621, *et. seq*. These practices include, but are not limited to, treating Plaintiff differently than her younger co-workers, giving younger coworkers more opportunities for advancement and promotion, and terminating Plaintiff's employment because of her age.

67. Plaintiff was 42 years old at the time of her termination.

68. Defendant terminated Plaintiff but retained younger, less-qualified employees.

69. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

70. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the laws that protect Plaintiff.

71. Defendant failed to take all reasonable steps to prevent discrimination against Plaintiff from occurring.

72. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages

and benefits, and has incurred attorneys' fees, costs and expenses and suffered other serious damages.

## COUNT 5

### VIOLATION OF EQUAL PAY ACT OF NEBRASKA

73. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

74. Defendant violated the Equal Pay Act of Nebraska, Neb. Stat. § 48-1219, *et seq.*, by refusing to compensate Plaintiff equally to male employees who had substantially similar job requirements, classifications, conditions, functions, titles, skills, duties and/or effort and responsibility under the similar working conditions and failing to compensate Plaintiff equally to male employees who performed substantially similar work.

75. As a direct result of said sex discrimination, Plaintiff has incurred a substantial loss of earnings and earning capacity, incurred attorneys' fees, and has otherwise been damaged.

## COUNT 6

### DISCRIMINATION BASED ON SEX
### IN VIOLATION OF NEBRASKA FAIR EMPLOYMENT PRACTICE ACT

76. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

77. Defendant subjected Plaintiff to differential treatment based on sex, in violation of the Nebraska Fair Employment Practice Act, Neb. Stat. § 48-1101, *et seq.*

78. Plaintiff is female.

79. Defendant treated Plaintiff less favorably than male employees who were similarly situated. This differential treatment includes, but is not limited to, terminating Plaintiff because of her sex.

80. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities, compensation, terms, conditions, or privileges of employment and otherwise adversely affect the terms and conditions of Plaintiff's employment because of Plaintiff's sex.

81. The unlawful employment practices complained of above were intentional, were performed by Defendant with malice and/or with reckless indifference to Nebraska Fair Employment Practice Act which protects Plaintiff and did not have legitimate, non-discriminatory reasons for the employment practices complained of above.

82. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses and suffered other serious damages.

## COUNT 7

### RETALIATION IN VIOLATION OF TITLE VII

83. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

84. Defendant subjected Plaintiff to differential treatment based on sex, in violation of the Nebraska Fair Employment Practice Act, Neb. Stat. § 48-1101, *et seq.*

85. Plaintiff voiced her complaint that she believed she was being treated differently on account of her sex to the President and owners of Defendant.

86. Defendant treated Plaintiff less favorably than other employees that were not complaining of sex discrimination. This differential treatment includes, but is not limited to, terminating Plaintiff because of her complaints.

87. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect the terms and conditions of Plaintiff's employment because of Plaintiff's complaints.

88. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to Title VII which protects Plaintiff.

89. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and incurred attorneys' fees, costs and expenses and suffered other serious damages.

## COUNT 8

### AGE DISCRIMINATION IN VIOLATION OF THE NEBRASKA AGE DISCRIMINIATION IN EMPLOYMENT ACT

90. Plaintiff realleges each and every paragraph and allegation set forth in this Complaint.

91. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful age discrimination in violation of the Nebraska Age Discrimination in Employment Act, Neb. Stat. § 48-1001, *et. seq*. These practices include, but are not limited to, treating Plaintiff differently than her younger co-workers, giving younger coworkers more opportunities for advancement and promotion, and terminating Plaintiff's employment because of her age.

92. Plaintiff was 42 years old at the time of her termination.

93. Defendant terminated Plaintiff but retained younger, less-qualified employees.

94. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her age.

95. The unlawful employment practices complained of above were intentional and were performed by Defendant with malice and/or with reckless indifference to the laws that protect Plaintiff.

96. Defendant failed to take all reasonable steps to prevent discrimination against Plaintiff from occurring.

97. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, mental anguish, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages

and benefits, and has incurred attorneys' fees, costs and expenses and suffered other serious damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of complained of herein be adjudged, decreed and declared to be in violation of the rights secured to Plaintiff by federal law.

b. That Defendant be required to make Plaintiff whole for its adverse, discriminatory and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That Plaintiff be reinstated to her job.

d. That Plaintiff be awarded front pay and the monetary value of any employment benefits to which she would have been entitled to as an employee of Defendant

e. That Plaintiff be awarded compensatory damages in amount to be determined at trial.

f. That Plaintiff be awarded punitive damages.

g. That Plaintiff be awarded liquidated damages.

h. That the Court award Plaintiff all attorneys' fees, expenses, costs and disbursements pursuant to any applicable laws or statutes.

i. That the Court grant such other and further relief as it deems fair and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS**

Dated: November 7, 2018.

**COLLINS, BUCKLEY, SAUNTRY & HAUGH, PLLP**

*/s/ Bryce M. Miller*

Bryce M. Miller, MN No. 386901
332 Minnesota Street, Suite W1100
Saint Paul, MN  55101
Phone: 651.888.6223
bmiller@cbsh.net

*ATTORNEYS FOR PLAINTIFF*